**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**James Edward ROEDERER,
Defendant–Appellant.**

No. 92–6385.

United States Court of Appeals,
Tenth Circuit.

Dec. 3, 1993.

**974**

M. Jay Farber (John E. Green, U.S. Atty., with him on the brief), Asst. U.S. Atty., Oklahoma City, OK, for plaintiff-appellee.

Fred L. Staggs, Oklahoma City, OK, for defendant-appellant.

Before BRORBY, BARRETT and KELLY, Circuit Judges.

OPINION ON REHEARING

BARRETT, Senior Circuit Judge.

This is a revision of our opinion filed August 10, 1993.

James Edward Roederer was charged in a twelve-count indictment with conspiracy to distribute cocaine, possession with intent to distribute cocaine, and distribution of cocaine. Roederer appeals from the sentence imposed on him following his guilty pleas to Count 1, charging a conspiracy to possess with intent to distribute cocaine from 1980 to July of 1987, in violation of 21 U.S.C. § 846 (pre-Sentencing Guidelines offense), and to Count 11, charging distribution of cocaine on May 20, 1992, in violation of 21 U.S.C. § 841(a)(1) (Sentencing Guidelines offense).

Count 1 charged:

From on or about 1980, and continuously thereafter until on or about July, 1987 ... James Edward Roederer ... wilfully and knowingly did unlawfully combine, conspire, confederate and agree with Alan Joseph Rockford and Robert Eugene Miles, co-conspirators but not codefendants herein, and with divers[e] other persons ... to possess with intent to distribute and to distribute cocaine....

\* \* \* \* \* \* \*

*OVERT ACTS*

To effect the objects of the conspiracy, the defendant and co-conspirators ... committed diverse overt acts ... among which were the following:

\* \* \* \* \* \*

4. During approximately 1985 to approximately July, 1987, James Edward Roederer, distributed quantities of cocaine to Paul Seikel.

5. During approximately 1983 to approximately July, 1987, James Edward Roederer, distributed quantities of cocaine to Tommy Joe Hamilton.

\* \* \* \* \* \*

All in violation of Title 21, United States Code, Section 846.

(Appellant's Appendix at 4–6).

Count 11 charged:

On or about May 20, 1992 ... James Edward Roederer, knowingly and intentionally did unlawfully distribute approximately one-fourth (¼) ounce of cocaine ... to Linda Nixon.

All in violation of Title 21, United States Code, Section 841(a)(1).

(Appellant's Appendix at 10).

In keeping with a plea agreement, Roederer entered a plea of guilty to Counts 1 and 11 and the government agreed to dismiss the remaining ten counts. Roederer's presentence report set forth a total offense level of 32, reflecting: a base offense level of 30 (predicated on an estimate of 4.248 kilos of cocaine distributed by Roederer between 1984 and 1992); a two-level specific offense characteristic increase (predicated on a firearm found in Roederer's residence near one-eighth ounce of cocaine); and no adjustment for acceptance of responsibility.

Roederer objected to the presentence report, arguing that: the report failed to inform the court of its sentencing options, i.e., "[the court's] authority to treat Count 11 (Guidelines count) independently of Count 1 (pre-Guidelines count).... (Appellant's Appendix at 31); the quantities of drugs asserted in the report were greatly inflated in violation of his due process rights; he was entitled to a reduction for acceptance of responsibility; and there was no basis for a two-level enhancement for possession of a firearm.

During the sentencing hearing, Roederer argued that: reaching back to the Count 1 conspiracy for conduct unrelated to the Count 11 offense of conviction violated his due process rights and "basically in almost ex post facto fashion [puts] a guideline law requirement on very old conduct," (Appellant's Appendix at 72); the court should "sentence him [Roederer] on Count 1 under the old law and sentence him on Count 11 under the guidelines law and not try to take this guidelines law and reach back arbitrarily in time to unrelated conduct." *Id.* at 73. Roederer also reiterated that it was improper to add two levels for possessing a firearm, "because the drug felony—the distribution occurred elsewhere," *id.* at 81, and that he was entitled to a reduction for acceptance of responsibility.

The court rejected Roederer's argument that it was improper to add two levels for possession of a firearm. The court did, however, grant a reduction for acceptance of responsibility. On November 9, 1992, the court sentenced Roederer to "110 months as to Count 1 and 110 months as to Count 11 to be served concurrently," *id.* at 124, and three years of special parole on Count 1 and three years of supervised release on Count 11, to be served concurrently.

On appeal, Roederer contends that: the district court denied him fundamental fairness by violating the ex post facto and double jeopardy clauses, his due process rights, and the relevant conduct rule of the Sentencing Guidelines in calculating his base offense level; the evidence upon which the court relied in determining relevant conduct lacked sufficient reliability; and the court erred in imposing a two level enhancement for possessing a firearm during the commission of a drug offense.

I.

■ Roederer asserts that the district court denied him fundamental fairness by violating the ex post facto and double jeopardy clauses, his due process rights, and the relevant conduct rule under the Guidelines when it used drug quantities attributed to Count 1, a conspiracy which terminated prior to the effective date of the Guidelines, to determine the base offense level of the Count 11 cocaine distribution offense. Roederer also contends that the court did not attach its

findings and determinations relative to the factual issues raised at sentencing as required under Fed.R.Crim.P. 32(c)(3)(D) and U.S.S.G. § 6A1.3, as construed in *United States v. Jimenez*, 928 F.2d 356 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 164, 116 L.Ed.2d 129 (1991).

a.

Roederer argues that the court violated the ex post facto clause by including as relevant conduct an offense which occurred prior to the effective date of the Guidelines. We rejected a similar argument in *United States v. Haddock*, 956 F.2d 1534, 1553–54 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 88, 121 L.Ed.2d 50 (1992):

> The Ex Post Facto Clause prohibits " 'any statute which punishes as a crime, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission....' " *Collins v. Youngblood*, 497 U.S. 37, 42, 110 S.Ct. 2715, 2719, 111 L.Ed.2d 30 (1990) (quoting *Beazell v. Ohio*, 269 U.S. 167, 169–70, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925)). The district court's consideration of losses associated with pre-Guideline crimes in arriving at the Guideline offense level for Counts 8, 9, and 10 does not violate any of these ex post facto prohibitions.... We conclude that the enhancement of a sentence for a later offense based on losses associated with crimes that were committed prior to the effective date of the Guidelines does not violate the Ex Post Facto Clause.

The Sentencing Guidelines do not apply to criminal offenses which occurred before the November 1, 1987, effective date of the Sentencing Reform Act of 1984, 28 U.S.C. §§ 991–998; U.S.S.G. § 1B1.1, *et seq.*, 18 U.S.C.App. *See United States v. Rogers*, 960 F.2d 1501 (10th Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 817, 121 L.Ed.2d 684 (1992). This is consistent with the rule that a change in the law increasing the penalty attributable to a particular crime would compel application of the law in effect on the date of the crime in order to avoid the Article I, Section 9, Clause 3 prohibition against ex post facto laws. *United States v. Diamond*,

969 F.2d 961 (10th Cir.1992). *See also United States v. Saucedo*, 950 F.2d 1508, 1513 (10th Cir.1991), *cert. denied*, —— U.S. ——, 113 S.Ct. 1343, 122 L.Ed.2d 725 (1993) (While generally the guidelines in effect at the date of sentencing are applicable, *see* 18 U.S.C. §§ 3553(a)(5), (a)(4), the ex post facto clause prohibits the retroactive application of a changed guideline if the change disadvantages the defendant).

In this case, the enhancement of Roederer's sentence by aggregating drugs distributed by Roederer during the course of the conspiracy with the drugs distributed by him in the commission of the Count 11 distribution offense did not (a) increase the penalty imposed for the pre-Guidelines crime, or (b) constitute a change in substantive law which disadvantages him.

Roederer further contends that the court violated his due process rights and the double jeopardy clause by including as relevant conduct the Count 1 offense. Because " 'courts have traditionally been allowed to consider all sources of information in formulating an appropriate sentence' [quoting *United States v. Beaulieu*, 893 F.2d 1177, 1179 (10th Cir.1990) (citing Fed.R.Evid. 1101(d)(3)) ] ... [and because] the amount of drugs upon which one is sentenced is not limited to the amount to which a defendant enters a plea of guilty or to the amount contained in a count upon which one is convicted," *Jimenez*, 928 F.2d at 365, Roederer's due process argument is without merit.

The Double Jeopardy Clause of the Fifth Amendment forbids that "any person be subject for the same offense to be twice put in jeopardy of life or limb." United States Constitution, Amendment V. Double jeopardy renders unconstitutional a second prosecution for the same offense after acquittal or conviction, and multiple punishments for the same crime. *Albernaz v. United States*, 450 U.S. 333, 101 S.Ct. 1137, 67 L.Ed.2d 275 (1981). A court avoids a double jeopardy violation when it "aggregate[s] the amount of losses in calculating the offense level for the Guidelines sentence, so long as it imposes concurrent sentences for the pre-Guidelines and Guidelines offenses." *United States v. Scarano*, 975 F.2d 580, 586 (9th Cir.1992)

(citing *United States v. Niven*, 952 F.2d 289, 294 (9th Cir.1991)). There was no violation of the double jeopardy clause in the instant case.

### b.

◼ Roederer contends that the court violated the relevant conduct rule under the Guidelines in determining his base offense level for Count 11. We review factual findings purporting to support a district court's base offense level calculations under the clearly erroneous standard. *United States v. Wise*, 990 F.2d 1545, 1550 (10th Cir.1992); *United States v. Smith*, 951 F.2d 1164, 1166 (10th Cir.1991).

◼ The district court failed to make any specific findings relative to this issue. We may address it, however, because "we are 'free to affirm a district court decision on any grounds for which there is a record sufficient to permit conclusions of law, even grounds not relied upon by the district court.'" *Griess v. Colorado*, 841 F.2d 1042, 1047 (10th Cir.1988) (quoting *Alfaro Motors, Inc. v. Ward*, 814 F.2d 883, 887 (2nd Cir.1987)). We can affirm on any ground that finds support in the record. *Colorado Flying Academy, Inc. v. United States*, 724 F.2d 871, 880 (10th Cir.1984), *cert. denied*, 476 U.S. 1182, 106 S.Ct. 2915, 91 L.Ed.2d 544 (1986); *Cayce v. Carter Oil Co.*, 618 F.2d 669, 677 (10th Cir. 1980).

Roederer argues that the Count 1 conspiracy terminated five years prior to the cocaine distribution charged in Count 11, and that the conspiracy did not continue by "virtue of two of the persons [he] sold to prior to July, 1987, continuing to purchase from him thereafter." (Appellant's Brief at 22). Furthermore, he contends that the time span from 1980 to 1992 is so great that his Count 1 conspiracy should be foreclosed from consideration as relevant conduct for purposes of Count 11.

The government responds that "[t]he district court properly calculated [Roederer's Count 11] base offense level with the quantity of drugs [Roederer] distributed through the same course of conduct from 1980 until his arrest in 1992," (Appellee's Brief at 14),

and that Roederer pled guilty with full knowledge that the probation officer who prepared the presentence report considered all of his drug distribution activities as relevant conduct.

The Guidelines apply only to offenses committed after November 1, 1987. However, "courts agree that the guidelines apply to 'straddle' crimes: continuing offenses 'in which acts comprising the crime occur both before and after the effective date of the Guidelines.'" *United States v. Morrison*, 938 F.2d 168, 170 (10th Cir.1991) (quoting *United States v. Bakker*, 925 F.2d 728, 739 (4th Cir.1991)). *See also United States v. Rogers*, 960 F.2d 1501, 1514 (10th Cir.), *cert. denied*, ⸺ U.S. ⸺, 113 S.Ct. 817, 121 L.Ed.2d 689 (1992) (Guidelines do not apply to offenses which occurred before the effective date of the Sentencing Reform Act); *United States v. Williams*, 897 F.2d 1034, 1040 (10th Cir.1990), *cert. denied*, ⸺ U.S. ⸺, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991) (Guidelines applied to conspiracy beginning before and continuing after November 1, 1987); *United States v. Terzado–Madruga*, 897 F.2d 1099, 1123 (11th Cir.1990); *United States v. Lee*, 886 F.2d 998, 1003 (8th Cir. 1989), *cert. denied*, 495 U.S. 906, 110 S.Ct. 1926, 109 L.Ed.2d 290 (1990); *United States v. Boyd*, 885 F.2d 246, 248 (5th Cir.1989).

Here, the record is clear that the conspiracy between Roederer and Miles did not continue beyond November 1, 1987. Count 1 of the Indictment charges that "[f]rom on or about 1980, and continuously thereafter until on or about July, 1987, ... Roederer ... did unlawfully combine, conspire, confederate and agree ... to possess with intent to distribute and to distribute cocaine...." (Appellant's Appendix at 4). In his plea agreement, Roederer stated that "[f]rom about 1984 to about early July 1987, I agreed with Robert Eugene Miles that he would supply me with cocaine for purposes of redistribution. The agreement and conspiracy between Mr. Miles and me ended completely in early July 1987 and we ceased having any further dealings with each other." *Id.* at 21. As such, this is not a straddling case. Accordingly, the Guidelines do not apply to Count 1, a pre-Guidelines conspiracy charge.

■ In applying the Guidelines to Count 11 to determine the base offense level for this Guidelines drug offense, § 1B1.3(a)(2) instructs the sentencing court to consider relevant conduct as follows:

(a) Unless otherwise specified, (i) the base offense level where the guideline specifies more than one base offense level ... shall be determined on the basis of the following:

\* \* \* \* \* \*

(2) solely with respect to offenses of a character for which § 3D1.2(d) would require grouping of multiple counts, all such acts and omissions ... that were part of the same course of conduct or common scheme or plan as the offense of conviction....

Because Counts 1 and 11 would require grouping under § 3D1.2(d), "the sentencing judge is directed to aggregate the quantities of drugs 'that were part of the same course of conduct or common scheme or plan as the offense of conviction.' U.S.S.G. § 1B1.3(a)(2); see § 3D1.2(d)." *United States v. Ross,* 920 F.2d 1530, 1538 (10th Cir.1990).

■ In determining which acts and omissions may be considered in arriving at a Guideline's offense level, we note that pre-Guidelines conduct may be evaluated. The Fourth Circuit has held:

[s]ince Relevant Conduct is a real offense concept, it encompasses criminal activity in the entirety of a common scheme regardless of whether the conduct occurred before or after November 1, 1987, the effective date of the guidelines. However, only counts of conviction that occur, in whole or in part, after that date are subject to a guidelines sentence.

*United States v. Watford,* 894 F.2d 665, 668 n. 2 (4th Cir.1990). *See also United States v. Kings,* 981 F.2d 790, 794 n. 6 (5th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2450, 124 L.Ed.2d 666 (1993). Further, an advisory by the United States Sentencing Commission provides:

Relevant conduct for offenses subject to the guidelines is to be determined without regard to the November 1 implementation date. If the relevant conduct for an offense committed on or after November 1, 1987, overlaps with conduct sanctioned as part of a pre-November 1 count, there would be a potential for double counting unless the pre-guideline counts were sentenced concurrently. The court will have to carefully fashion the sentence with these concerns in mind.

*Kings,* 981 F.2d at 795 n. 9 (citing United States Sentencing Commission, *Questions Most Frequently Asked About the Sentencing Guidelines* 3–4 (5th ed. March 1992) (provided in response to question 13: "If an indictment includes separate counts under pre-guidelines law and post-guidelines law, how should the defendant be sentenced?")). Thus, it is clear that a court may consider conduct which occurred pre-Guidelines as relevant.

The commentary to the Guidelines provides that "in a drug distribution case, quantities and types of drugs not specified in the count of conviction are to be included in determining the offense level if they were part of the same course of conduct or part of a common scheme or plan as the count of conviction." U.S.S.G. § 1B1.3, comment. (backg'd). Clearly, "a sentencing court may look beyond the charges alleged in the indictment," *United States v. Underwood,* 982 F.2d 426, 429 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 3043, 125 L.Ed.2d 729 (1993) (quoting *United States v. Abreu,* 962 F.2d 1425, 1437 (10th Cir.1992), *cert. granted and judgment vacated,* —— U.S. ——, 113 S.Ct. 2405, 124 L.Ed.2d 630 (1993)), and may consider quantities of drugs not alleged in calculating a defendant's base offense level, provided the drugs were part of the same course of conduct or common scheme or plan as the offense of conviction. A defendant need not have been convicted of trafficking the additional quantities, *United States v. Boyd,* 901 F.2d 842, 844 (10th Cir.1990), but the prosecution must connect the defendant to the prior drug offenses and prove by a preponderance of the evidence that the quantities of drugs involved therein were part of the same course of conduct or common scheme or plan as the offense of conviction, "regardless of whether the defendant was

convicted of the underlying offenses pertaining to the additional amounts." *United States v. Rutter,* 897 F.2d 1558, 1562 (10th Cir.), *cert. denied,* 498 U.S. 829, 111 S.Ct. 88, 112 L.Ed.2d 60 (1990). "Conduct on dismissed counts which is part of the same course of conduct or common scheme or plan may also be considered in determining the base offense level." *United States v. Pollard,* 965 F.2d 283, 287 (7th Cir.1992) (citing *United States v. Franklin,* 902 F.2d 501, 504 (7th Cir.), *cert. denied,* 498 U.S. 906, 111 S.Ct. 274, 112 L.Ed.2d 229 (1990)).

"The sole limiting factor to such aggregating of amounts is the necessity of the district court to find ... that the drug quantities were 'part of the same course of conduct or common scheme or plan as the offense of conviction.'" *United States v. Barela,* 973 F.2d 852, 856 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1021, 122 L.Ed.2d 167 (1993). The issue in this case is whether the conspiracy to distribute cocaine was "part of the same course of conduct or common scheme or plan as the offense of conviction," the distribution of cocaine to Nixon, such that Roederer's base offense level must account for the amount of cocaine involved in the conspiracy.

The Second Circuit has drawn a distinction between the terms "same course of conduct" and "common scheme or plan." Adopting the view of Judge Wilkins, Chairman of the Sentencing Commission, the court indicated that "same course of conduct" "does not require a *connection* between the acts in the form of an overall criminal scheme. Rather, the guideline term contemplates that there be sufficient similarity and temporal proximity to reasonably suggest that repeated instances of criminal behavior constitute a pattern of criminal conduct." *United States v. Perdomo,* 927 F.2d 111, 115 (2d Cir.1991) (citing *United States v. Santiago,* 906 F.2d 867, 872 (2d Cir.1990) (quoting Wilkins & Steer, *Relevant Conduct: The Cornerstone of the Federal Sentencing Guidelines,* 41 S.C.L.Rev. 495, 515–16 (1990)) (emphasis in original). Thus, "same course of conduct" "looks to whether the defendant repeats the same type of criminal activity over time. It does not require that acts be 'connected to-

gether' by common participants or by an overall scheme. It focuses instead on whether defendant has engaged in an identifiable 'behavior pattern,' (citation omitted) of specified criminal activity." *Perdomo,* 927 F.2d at 115.

In *Perdomo,* though the persons with whom Perdomo negotiated a drug sale differed from those in previous offenses, and though Perdomo's role in the activity changed, these factors were not determinative when evaluating whether Perdomo's activity constituted the "same course of conduct."

> Common identity of co-conspirators, which could be a key factor in identifying a common scheme or plan, as in identifying single or multiple conspiracies or criminal enterprises (citations omitted), may be unnecessary in determining whether a defendant himself has engaged in a pattern of criminal behavior—the focus of the 'same course of conduct' inquiry. Likewise, a change in the operation's *modus operandi* ... need not affect the 'same course of conduct' inquiry when defendant's continued involvement in the specified type of criminal activity—cocaine trafficking—remains evident.

*Perdomo,* 927 F.2d at 115.

■ In *Santiago,* the court noted that "whether two or more transactions may be considered a part of the same course of conduct is not determined by temporal proximity alone." 906 F.2d at 872. In assessing conduct, "the sentencing court is to consider such factors as the nature of the defendant's acts, his role, and the number and frequency of repetitions of those acts, in determining whether they indicate a behavior pattern." *Id.* Similarity, regularity, and temporal proximity are the significant elements to be evaluated. *United States v. Hahn,* 960 F.2d 903 (9th Cir.1992). No one characteristic is always adequate to determine similarity of offenses, "and each case depends largely on its own facts." *Santiago,* 906 F.2d at 872.

In the instant case, the record supports the determination that the 1980–87 conspiracy was a part of the same course of conduct as the 1992 distribution. By pleading guilty to Count 1, Roederer admitted that he had

engaged in a conspiracy to possess with intent to distribute cocaine from 1980 to 1987 and that he had distributed cocaine to Paul Seikel from approximately 1985 to July, 1987, and to Tommy Joe Hamilton from approximately 1983 to July, 1987. By pleading guilty to Count 11, Roederer admitted that he had distributed cocaine to Linda Nixon on or about May 20, 1992. Moreover, under *Rutter* and *Garcia*, the court could consider the drug quantities in the dismissed counts in determining Roederer's base offense level for Count 11 if the drugs were part of the same course of conduct as the offense of conviction.

A review of the dismissed counts establishes the same course of conduct, i.e., cocaine distribution: Count 3 charged that Roederer had distributed cocaine to one Ellen Moorman in September/October, 1987; Count 4 charged that Roederer had distributed cocaine to Ellen Moorman on or about January, 1988; Count 5 charged that Roederer had distributed cocaine to Paul Seikel on or about November 22, 1989; Count 6 charged that Roederer had distributed cocaine to Tommy Joe Hamilton on or about early mid-January, 1992; Count 7 charged that Roederer had distributed cocaine to Linda Nixon on or about March 10, 1992; Count 8 charged that Roederer had distributed cocaine to Linda Nixon on or about March 27, 1992; Count 9 charged that Roederer had distributed cocaine to Paul Seikel on or about April 15, 1992; and Count 10 charged that Roederer had distributed cocaine to Tommy Joe Hamilton on or about mid to late April, 1992.

Evidence of Roederer's cocaine distribution activities was also developed during his sentencing hearing. Robert Miles, one of Roederer's co-conspirators, testified that he had been "dealing with [Roederer] with regard to cocaine" from 1984 until approximately July 7, 1987, and that to the best of his knowledge Roederer earned his living by selling cocaine. (R., Vol. II at 19–20). FBI Agent Hersley testified that he had interviewed Tommy Joe Hamilton and Paul Seikel, *id.* at 34; Seikel told Agent Hersley that he had been purchasing cocaine from Roederer on a continuous basis for about six or seven years with the last transaction occurring on April 15, 1992, *id.* at 35; Hamilton

told Agent Hersley that he had been purchasing cocaine from Roederer for about eight to ten years, from 1982 or 1983, with the last transaction occurring in the middle to latter part of April, 1992, *id.;* and Hamilton and Seikel continued to receive cocaine from Roederer from July, 1987, through May, 1992, with the exception of a nine-month period when Mrs. Seikel was pregnant, during which the Seikels stopped using cocaine. *Id.* at 36.

We hold that the evidence, when viewed in its entirety, establishes that Roederer was actively engaged in the same type of criminal activity, distribution of cocaine, from the 1980s through May, 1992. Roederer's conduct was sufficiently similar and the instances of cocaine distribution were temporarily proximate. Under these circumstances, the sentencing court properly aggregated drug quantities from Count 1 with the drugs relative to Count 11 in determining Roederer's base offense level for Count 11.

c.

■ Roederer contends that the sentencing court did not comply with Fed.R.Crim.P. 32(c)(3)(D) as construed in *United States v. Jimenez.* In *Jimenez* we held:

Rule 32(c)(3)(D) of the Federal Rules of Criminal Procedure provides that if the factual accuracy of a presentence report is challenged by a defendant or his counsel, the district court must either make a finding as to the allegation or make a determination that no such finding is necessary as the controverted matter will not be taken into account by the sentencing court.

928 F.2d at 365.

During Roederer's sentencing hearing, counsel objected to the presentence report on the basis that: Counts 1 and 11 were too remote in time and should be considered separately; it was improper to increase Roederer's offense level two levels for possessing a firearm in connection with a drug felony because the distribution charged in Count 11 did not occur within the proximity of the apartment where the firearm was found; and he was entitled to a two level reduction for acceptance of responsibility.

The court did not make any findings on Roederer's objections. Following Roederer's objections, the district court was required to "either make a finding as to the allegation or make a determination that no such finding is necessary as the controverted matter will not be taken into account by the sentencing court." *Jimenez,* 928 F.2d at 365. Rule 32(c)(3)(D) also provides that a written record of such findings or determinations shall be appended to the presentence report. That was not done in this case. *See also United States v. Price,* 945 F.2d 331, 333 (10th Cir.1991); *United States v. Anthony,* 944 F.2d 780, 783 (10th Cir.1991); *United States v. Harris,* 944 F.2d 784, 786 (10th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 903, 116 L.Ed.2d 804 (1992); *United States v. Alvarado,* 909 F.2d 1443, 1445 (10th Cir.1990) (findings must be made so that the court of appeals knows the facts upon which the district court relied).

We reject the government's argument that the court fully complied with Rule 32(c)(3)(D) by stating in Roederer's judgment that "[t]he court adopts the factual findings and guideline application in the presentence report except ... Objection to acceptance of responsibility sustained—total offense level reduced to 30." (Appellant's Appendix at 64). We agree with Roederer that the district court failed to comply with Rule 32.

## II.

Roederer contends that his due process rights were violated when estimates of drug distribution quantities were used in calculating his sentence. Roederer argues that the district court relied on evidence which lacked sufficient indicia of reliability to support its accuracy and, as a result, his sentence was based on extrapolation and speculation rather than upon a preponderance of the evidence.

 The government must prove drug quantities by a preponderance of the evidence. *United States v. Cook,* 949 F.2d 289, 295 (10th Cir.1991). In calculating drug quantities for sentencing purposes, a district court may make estimates "based on information with a minimum indicia of reliability." *United States v. Guest,* 978 F.2d 577, 579

(10th Cir.1992) (quoting *United States v. Coleman,* 947 F.2d 1424, 1428 (10th Cir. 1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1590, 118 L.Ed.2d 307 (1992)). *See also United States v. Sturmoski,* 971 F.2d 452, 462 (10th Cir.1992). We review determinations of drug quantities under the clearly erroneous standard. *Cook,* 949 F.2d at 296.

Here, the district court's determination of drug quantities was based on the probation officer's estimates of the drugs involved in Roederer's offenses, evidence presented by FBI Agent Hersley, and the testimony of one of Roederer's former suppliers. We hold that the evidence had a minimum indicia of reliability and that Roederer's due process rights were not violated.

## III.

Roederer contends that the district court improperly enhanced his sentence by two levels for possession of a firearm in connection with a drug offense, pursuant to U.S.S.G. § 2D1.1(b)(1).

 The distribution of cocaine by Roederer to Linda Nixon charged in Count 11 occurred on May 20, 1992, in a parking lot near a restaurant in Oklahoma City, Oklahoma. The transfer occurred in Roederer's car. Thereafter, law enforcement officers pursued Roederer's car, effected a stop, arrested Roederer, and searched him and his car. No additional drugs and no weapons were found on Roederer or in the car. Subsequently, and pursuant to a search warrant, officers searched Roederer's apartment where they found one-eighth ounce of cocaine and a loaded revolver. On appeal, Roederer argues that because the charged offense did not occur in his apartment and because no weapon was found on his person or in his car, he did not possess a firearm in connection with a drug offense for purposes of enhancement under § 2D1.1(b)(1). (R., Vol. II, pp. 15–16).

The government responds that the court properly enhanced Roederer's sentence inasmuch as the dismissed counts of the indictment dealt with drug distributions by Roederer in his apartment where Roederer kept a firearm. The government offered the testimony of Mr. Robert Eugene Miles that be-

ginning in 1984 until about July 7, 1987, he sold quantities of cocaine to Roederer and he observed that Roederer kept a revolver underneath the couch in his apartment; furthermore, he observed Roederer carrying a firearm. *Id.* at 21–22. The government also called FBI Agent John Hersley who testified that during the search of Roederer's apartment, the FBI found one-eighth ounce of cocaine, triple beam scales, a cutting agent commonly used with cocaine, envelopes commonly used in distribution of cocaine, and a loaded revolver underneath a chair. *Id.* at 31–33. Agent Hersley also testified that he had interviewed Paul Seikel and Tommy Joe Hamilton, both of whom had purchased cocaine from Roederer at his apartment over a long period of time. *Id.* at 35–37. Hersley further stated that, based on his education, experience, and training, guns were used in the course of the drug dealing business and "if any problems arose when a drug transaction was taking place in that apartment, that the gun would be close enough for the person to be able to get to it." *Id.* at 34.

In the district court, Roederer argued that enhancement for possession of a firearm was improper because the drug distribution charged did not occur in the apartment. (R., Vol. II, Pp. 15–16). In response, the government pointed out that the dismissed counts of the Indictment dealt with distributions of cocaine by Roederer to Paul Seikel and T.J. Hamilton in Roederer's apartment where the firearm was located. *Id.* at 17–18. The record reflects that the government dismissed Counts 5 and 9 which charged Roederer with distribution of cocaine to Paul Seikel on November 1, 1989, and April 15, 1992, together with Counts 6 and 10 which charged Roederer with distribution of cocaine to Tommy Joe Hamilton mid-January, 1992, and April, 1992. As previously observed, the testimony of Robert Eugene Miles and FBI Agent John Hersley supported the government's claim that Roederer possessed a firearm. Further, the testimony of Hersley supported the contention that all of Roederer's distributions of cocaine to Seikel and Hamilton occurred at Roederer's apartment. Without stating any reasons, the district court denied Roederer's objection to a two-level increase of the base offense level for possession of a firearm in connection with a drug offense recommended in the Probation Office's Presentence Investigation Report. *Id.* at 56.

§ 2D1.1(b)(1) as promulgated in 1988 provided:

(b) Specific Offense Characteristics

(1) If a firearm or other dangerous weapon was possessed during commission of the offense, increase by 2 levels.

On November 1, 1991, § 2D1.1(b)(1) was amended to read:

(b) Specific Offense Characteristics

(1) If a dangerous weapon (including a firearm) was possessed, increase by 2 levels.

Significantly, the 1991 amendment deleted the words "during commission of the offense." U.S.S.G. App. C, amendment 394 clarified that the relevant conduct provision, i.e., § 1B1.3(a)(2), applies to adjustments in § 2D1.1(b)(1). The amended version now conforms to U.S.S.G. § 1B1.1 (comment. n. 1(1)) which defines "offense" as "the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." Here, several of the dismissed counts of the indictment would require grouping under U.S.S.G. § 3D1.2(d), and U.S.S.G. § 1B1.3(a)(2) provides that, in such event, specific offense characteristics are to be determined with reference to all acts "that were part of the same course of conduct or common scheme or plan as the offense of conviction." *See United States v. Falesbrook,* 5 F.3d 715, 721 (4th Cir.1993) ("Even when a guilty plea is entered on a single count of possession, the court must nevertheless look to the entire relevant conduct in determining the sentence. That conduct ... includes possession of a gun while engaging in drug sales related to, though distinct from, the crime of conviction."); *United States v. Willard,* 919 F.2d 606, 609–10 (9th Cir.1990), *cert. denied,* —— U.S. ——, 112 S.Ct. 208, 116 L.Ed.2d 167 (1991).

"Weapon possession is established if the government proves by a preponderance of the evidence 'that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant.'" *United States v. Eastland,* 989 F.2d 760, 770 (5th Cir.1993) (quoting *United States v. Hooten,* 942 F.2d 878, 882 (5th

Cir.1991)), *cert. denied,* —— U.S. ——, 114 S.Ct. 246, 126 L.Ed.2d 200 (1993). "Generally, the government must provide evidence that the weapon was found in the same location where drugs or drug paraphernalia are stored or where part of the transaction occurred." *United States v. Hooten,* 942 F.2d at 882. We hold that the district court properly relied upon the testimony of Mr. Miles and FBI Agent Hersley, *supra,* in finding/concluding that Roederer had possessed a firearm in his apartment during the course of drug distribution activities. Thus, the district court did not err in enhancing Roederer's sentence by 2 levels pursuant to § 2D1.1(b)(1).

In conclusion, we hold that the district court properly aggregated drug quantities from the Count 1 conspiracy in achieving a base offense level for Count 11. We further hold that the court properly enhanced Roederer's base offense level by two levels for possession of a firearm. We hold, however, that the district court erred in failing to attach findings relative to factual issues raised at sentencing as required by Fed. R.Crim.P. 32(c)(3)(D).

The case is remanded to the district court for findings pursuant to Fed.R.Crim.P. 32(c)(3)(D), otherwise **AFFIRMED.**