**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 18 1997**

**PATRICK FISHER**
**Clerk**

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

TRACY LEWIS O'DONNELL,

Defendant-Appellant.

No. 96-8098
(D.C. No. 95-CR-104)
(D. Wyo.)

---

ORDER AND JUDGMENT[*]

---

Before ANDERSON, LOGAN, and EBEL, Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. See Fed. R. App. P. 34(a); 10th Cir. R. 34.1.9. Appellant's request for oral argument is therefore denied, and the case is ordered submitted without oral argument.

---

[*]     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

In this direct appeal, defendant Tracy Lewis O'Donnell challenges the propriety of his sentence following conviction of conspiracy to possess with intent to distribute methamphetamine in violation of 21 U.S.C. § 846. Specifically, Mr. O'Donnell asserts that the district court erred in enhancing his sentence two levels for possession of a firearm pursuant to USSG § 2D1.1(b)(1) and failing to afford him relief under 18 U.S.C. § 3553(f). We have jurisdiction pursuant to 18 U.S.C. § 3742(a), and we affirm.

## I. Background

In mid-July 1995, Mr. O'Donnell's co-defendant, David Witt, entered into an agreement with a confidential informant for the Wyoming Division of Criminal Investigation, whereby Mr. Witt agreed to procure four ounces of methamphetamine from Mr. O'Donnell in Arizona. The informant paid Mr. Witt $1,500 for the purchase of the methamphetamine. Mr. Witt traveled to Arizona to make the purchase and subsequently called the informant to advise him that he would need an additional $4,500 in order to complete the transaction. The informant wired this amount to Mr. O'Donnell's bank account in Arizona.

After attempting, without success, to acquire the methamphetamine, the two co-defendants and Mr. O'Donnell's wife traveled to Worland, Wyoming, where they returned the $6,000 to the informant before continuing on to Sturgis, South

-2-

Dakota, to attend an annual motorcycle rally. During this trip, Mr. O'Donnell carried with him a nine millimeter Beretta pistol. Mr. O'Donnell confessed to these facts during a non-custodial interview with agents of the Wyoming Division of Criminal Investigation.

In late August 1995, the co-defendants advised the informant that the methamphetamine was available, and again he wired $6,000 to Mr. O'Donnell's bank account in Arizona. In mid-September 1995, Mr. Witt personally delivered three ounces of methamphetamine to the informant in Worland, Wyoming. The final ounce was delivered to Mr. Witt by controlled mail delivery in early October 1995. Both Mr. O'Donnell and Mr. Witt were subsequently arrested.

On June 20, 1996, Mr. O'Donnell entered a non-conditional plea of guilty to conspiracy to possess and distribute methamphetamine in violation of 21 U.S.C. § 846.[1] He was sentenced to sixty months' imprisonment, four years' supervised release, a $10,000 fine, and a $50 special assessment. Because Mr. O'Donnell possessed a firearm during the course of the drug offense, the district court enhanced his sentence pursuant to USSG § 2D1.1(b)(1), and rejected his request for sentencing under the "safety valve" provision of the Sentencing

---

[1] In exchange for Mr. O'Donnell's plea of guilty to the charge of conspiracy to possess with intent to distribute methamphetamine, the government agreed to dismiss charges of aiding and abetting the possession of methamphetamine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.

Reform Act, 18 U.S.C. § 3553(f). Mr. O'Donnell asserts error as to both decisions.

## II. Discussion

### A. Standard of Review

We review de novo the district court's interpretation of the sentencing guidelines. See United States v. Acosta-Olivas, 71 F.3d 375, 377 (10th Cir. 1995). We have noted, however, that "a district court's application of the correct legal standard to a particular defendant, and the specific conclusion that the defendant is or is not eligible for relief under § 3553(f), would ordinarily be reviewed for clear error." Id. at 378 n.3.

### B. USSG § 5C1.2[2]

"Section 3553(f) was enacted as a 'safety valve' to permit courts to sentence less culpable defendants to sentences under the guidelines, instead of imposing mandatory minimum sentences." Acosta-Olivas, 71 F.3d at 378. The "safety value" provision allows the district court to depart from the statutory minimum sentence if it finds that:

---

[2] The U.S. Sentencing Commission Guidelines Manual, § 5C1.2, adopts verbatim the language of 18 U.S.C. § 3553(f).

(1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;

(2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapons (or induce another participant to do so) in connection with the offense;

(3) the offense did not result in death or serious bodily injury to any person;

(4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in 21 U.S.C. § 848; and

(5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

USSG § 5C1.2(1)-(5).

Here, the district court concluded that because Mr. O'Donnell possessed a firearm during his trip from Arizona to Worland, Wyoming, he did not qualify for relief under the second factor of § 5C1.2. The court opined that the trip to return the purchase money to the informant was part of the on-going drug trafficking transaction and, moreover, the co-defendants were carrying drugs at the time, albeit for the their own use.

We have held that "the defendant has the burden of proving, by a preponderance of the evidence, the applicability of [§ 5C1.2]." United States v. Verners, 103 F.3d 108, 110 (10th Cir. 1996). At his sentencing hearing, Mr. O'Donnell argued that the presence of the firearm was not for any purpose in furtherance or protection of a drug trafficking activity. His wife testified that he always took the firearm with him in the saddlebags on his motorcycle "for whatever reason we need them for, you know, shooting snakes, bears, I don't know whatever else." R. Vol. II at 16.

On appeal, Mr. O'Donnell argues that the return of the money to the informant in Wyoming was not in connection with the drug offense. He asserts that because the money was being returned, "the drug transaction had stopped and ended." Appellant's Br. at 8. Relying on Bailey v. United States, 116 S. Ct. 501 (1995), Mr. O'Donnell contends that the government was required to prove "a nexus between the offense and the firearm," and failed to do so. Appellant's Br. at 8.

In United States v. Hallum, 103 F.3d 87 (10th Cir. 1996), cert. denied, 117 S. Ct. 1710 (1997), we considered a similar argument. The defendant in Hallum argued that the burden was on the government to support the "in connection with" element of § 5C1.2(2) by a preponderance of the evidence. 103 F.3d at 89. He

further asserted "that we should analogize the 'possess' element of § 5C1.2 to the Supreme Court's restrictive interpretation of the 'use' language of 18 U.S.C. § 924(c)(1) in <u>Bailey</u> . . . , to require the government to prove active employment of the firearm in relation to the underlying offense." 103 F.3d at 89.

In rejecting this contention, we opined that "<u>Bailey</u> dealt with 'use' in § 924(c), not 'possess,' in § 5C1.2(2)," <u>id.</u>, and that the Supreme Court's analysis that "'§ 2D1.1(b)(1) provides an enhancement for a person convicted of certain drug-trafficking offenses if a firearm was possessed during the offense[,] . . . constitutes a recognition, . . . that 'possess' is to be given a broader meaning than 'use.'" <u>Id.</u> We then joined the Eighth Circuit in holding that "a firearm's proximity and potential to facilitate the offense is enough to prevent application of USSG § 5C1.2(2)." <u>Id.</u>; <u>see also</u> <u>United States v. Burke</u>, 91 F.3d 1052, 1053 (8th Cir. 1996). Here, we are satisfied that Mr. O'Donnell failed to prove a clear probability that the presence of the firearm during the trip to Wyoming to return the money was not for the purpose of facilitating that part of the drug trafficking conspiracy.

Mr. O'Donnell also tenuously argues that although he carried the gun, the money was always in Mr. Witt's possession. This argument also is unavailing. Section 5C1.2 is applicable not only to a defendant's own conduct, but also to "'conduct that he aided or abetted, counseled, commanded, induced, procured, or

willfully caused.'" Hallum, 103 F.3d at 90 (quoting USSG § 5C1.2, comment (n.4)). Accordingly, for purposes of the applicability of § 5C1.2, Mr. O'Donnell was responsible for Mr. Witt's actions as well as his own. The district court's finding that the presence of the firearm could have been for the purpose of the protection and furtherance of this joint activity was not clearly erroneous, and the court was correct in denying Mr. O'Donnell relief under § 5C1.2.

## C. USSG § 2D1.1(b)(1)

The sentencing guidelines provide that a base offense level should be increased by two levels "[i]f a dangerous weapon (including a firearm) was possessed." USSG § 2D.1(b)(1). Asking this court to consider the same arguments he made for application of § 5C1.2, Mr. O'Donnell asserts that the district court improperly enhanced his sentence for possession of a firearm in connection with a drug trafficking offense.

The government bears the initial burden "of proving by a preponderance of the evidence that the gun was proximate to the drug offense." United States v. Lang, 81 F.3d 955, 964 (10th Cir. 1996); see also United States v. Roederer, 11 F.3d 973, 982 (10th Cir. 1993) (holding "[w]eapon possession is established if the government proves by a preponderance of the evidence that a temporal and spacial relation existed between the weapon, the drug trafficking activity, and the

defendant") (quotation omitted). This can be done by establishing that the firearm was in the same general location "where drugs or drug paraphernalia are stored or where part of the transaction occurred." Roederer, 11 F.3d at 983 (quotation omitted). Once proximity is established, the burden shifts to the defendant to "show it is clearly improbable that the weapon was related to the offense." United States v. Robertson, 45 F.3d 1423, 1449 (10th Cir. 1995) (quotation omitted).

Here, it is clear that the return of money, originally intended for the purchase of drugs to the buyer/informant in Wyoming, was drug-trafficking activity, and that Mr. O'Donnell's firearm was proximately linked to that activity. Moreover, Mr. O'Donnell has not established a clear probability that the firearm was not present for the purpose of protecting and furthering the conspiracy. Therefore, the district court's two-level enhancement of sentence for possession of a firearm pursuant to § 2D1.1(b)(1) was proper.

The judgment of the United States District Court for the District of Wyoming is AFFIRMED.

Entered for the Court

Stephen H. Anderson
Circuit Judge

-9-