**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 31 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

WILLIAM H. ZUGG,

      Defendant-Appellant.

No. 99-3260
(D.C. No. 98-CR-40082-1-DES)
(District of Kansas)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Chief Judge, **EBEL** and **BRISCOE**, Circuit Judges.

      Defendant-Appellant William H. Zugg ("Zugg") appeals his sentence for distribution of methamphetamine in violation of 21 U.S.C. § 841(a)(1). Zugg argues that the district court erred when it enhanced his sentence for possession of a dangerous weapon pursuant to U.S.S.G. § 2D1.1(b)(1). Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we AFFIRM.

---

[*]After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# BACKGROUND

Zugg and a co-defendant, Macario Maldonado ("Maldonado") were charged in a four-count indictment with several drug-related charges: 1) conspiracy to distribute methamphetamine; 2) distribution of methamphetamine; 3) maintaining a place for the purpose of distributing or using a controlled substance; and 4) use of a firearm during a drug-trafficking crime.

The charges stemmed from a controlled purchase of drugs between a confidential informant ("CI") working with the Drug Task Force in Salina, Kansas, and Zugg and several of his associates. On June 2, 1997, the CI arranged to purchase five to six ounces of methamphetamine from Michael Linn, an associate of Zugg's, for $9,000.00. The CI then drove Linn to an apartment where Linn attempted to set up the purchase of the drugs with several of his associates. After a period of time, Linn exited the apartment and approached the CI's car. Linn informed the CI that a person inside the apartment was counting the money to ensure it was all there, and if it was, then the methamphetamine would be picked up. During this conversation, the CI noticed that Linn was carrying a weapon in his waistband. When the CI asked Linn about the gun, Linn replied that it was given to him by someone inside the apartment to protect himself.

A short time after this conversation, Zugg, Jesse Garman, another associate of Zugg's, and an unknown male drove away from the house in a grey Buick. After a period of time elapsed, the CI again made contact with Linn, who advised the CI that Garman was out of town trying to make contact with the source, and that only one ounce of methamphetamine could be obtained. After making arrangements with Linn to meet him later in a parking lot to complete the transaction, the CI left the apartment. Garman was later observed entering the apartment with a small black pouch.

During surveillance of the apartment, Task Force Agents observed Linn leave the apartment and go to a convenience store across the street. Linn then got into a cab. Officers stopped the cab and searched the vehicle. The officers located $7002 and twenty-six grams of methamphetamine. The agents then returned to the apartment where they encountered Garman, who indicated that Zugg knew the $9,000 was for methamphetamine.

Task Force Agents then obtained a search warrant and searched Zugg's residence. After entering the house, officers encountered Maldonado, who apparently lived with Zugg at the time, as well as several items of drug paraphernalia, marijuana residue, rolling papers, a spoon with traces of methamphetamine, and triple beam scales. Several handguns, shotguns and assault rifles were also recovered. It appeared to the agents that Maldonado was

attempting to load a weapon as the officers entered the room. Maldonado later told Zugg that he was "shooting dope with the gun in his hand when the police arrived," and apparently claimed to Zugg that he tried to fight the police when they entered Zugg's house.[1]

In his presentence interview, Zugg admitted that he took Garman to Great Bend, Kansas, to attempt to buy drugs. When they were unable to locate the drugs in Great Bend, they went back to Zugg's house where Zugg decided to sell one of his "8 balls," and proceeded to use his "triple beams to cut the hell out of it." Zugg stated that Maldonado then drove Garman back to his apartment and returned to Zugg's house. Zugg told Maldonado that he had "a bad feeling about the whole thing" and thought the police might be coming. He therefore instructed Maldonado to get rid of any "dope" he might have on him.

On April 26, 1999, Zugg entered a guilty plea to one count of distribution of methamphetamine in the amount of twenty-six grams in violation of 21 U.S.C. § 841(a)(1). The remaining counts of the indictment were dismissed. Zugg was sentenced to 46 months in prison and four years of supervised release. The district court enhanced Zugg's sentence by two levels for possession of a firearm during a drug trafficking crime under U.S.S.G. § 2D1.1(b)(1).

---

[1] None of the weapons found in Zugg's house were seized by the police and all were returned to Zugg.

## DISCUSSION

Zugg argues there was no evidence to support a two-level enhancement under U.S.S.G. § 2D1.1(b)(1), which provides: "If a dangerous weapon (including a firearm) was possessed, increase by 2 levels." We review factual findings under § 2D1.1(b)(1) for clear error and review the district court's interpretation and application of the guidelines de novo. See United States v. Flores, 149 F.3d 1272, 1279 (10th Cir. 1998).

"The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." U.S.S.G. § 2D1.1 note 3. The term offense is defined under the guidelines as the "conviction and all relevant conduct under § 1B1.3 (Relevant Conduct)." U.S.S.G. § 1B1.1 note 1(l). Here, several of the dismissed counts of the indictment would require grouping under U.S.S.G. § 3D1.2(d). U.S.S.G. § 1B1.3(a)(2) provides that, "in such event [when dismissed counts require grouping], specific offense characteristics are to be determined with reference to all acts that were part of the same course of conduct or common scheme or plan as the offense of conviction." United States v. Roederer, 11 F.3d 973, 982 (10th Cir. 1993) (internal quotations omitted).

"Possession of a weapon in connection with a drug trafficking offense is established if the government proves by a preponderance of the evidence that a temporal and spacial relation existed between the weapon, the drug trafficking activity, and the defendant." Flores, 149 F.3d at1280 (internal quotations omitted). The necessary nexus between the weapon, drug trafficking and defendant may be established by showing that "the weapon was located nearby the general location where drugs or drug paraphernalia are stored or where part of the transaction occurred." Id. (internal quotations omitted). In addition, the sentencing court may "attribute to a defendant weapons possessed by his codefendants if the possession of weapons was known to the defendant or reasonably foreseeable by him." United States v. McFarlane, 933 F.2d 898, 899 (10th Cir. 1991). "Once the government establishes that the weapon was possessed in proximity to the drugs or transaction, the burden shifts to the defendant to show it is clearly improbable that the weapon was related to the offense." Flores, 149 F.3d at 1280 (internal quotations omitted).

Here, the government met its burden by showing that the guns were present in Zugg's home where part of the drug transaction occurred. Zugg admitted in his presentence interview that after driving around with Garman to locate methamphetamine to sell to the CI, he and Garman went back to his house and cut up an 8 ball which he then gave to Garman to sell to the CI. Thus, part of the

transaction took place at the house where the guns were ultimately found later that same day. See Roederer, 11 F.3d at 983 (upholding enhancement, in part, because the defendant "possessed a firearm in his apartment during the course of drug distribution activities" even though the actual sale of drugs took place in a nearby parking lot). In addition, the government sustained its burden by establishing that Maldonado was actually holding one of the firearms in Zugg's house at the time the police executed the search warrant. Maldonado even bragged to Zugg that he attempted to fight the cops when they entered Zugg's house to execute the search warrant. As noted above, sentencing courts may attribute to a defendant a codefendant's possession of a weapon if it was reasonably foreseeable by him. We believe it was reasonably foreseeable to Zugg that Maldonado would possess a weapon to protect the drugs given that: (1) Maldonado was a codefendant of Zugg's; (2) Maldonado lived at Zugg's apartment; (3) the weapons in Zugg's house were plentiful, obvious, and accessible; and (4) Maldonado was warned by Zugg to remove any dope he possessed because Zugg believed the police might be on to them.

With the government's initial burden met, the enhancement is appropriate unless Zugg can show that it was clearly improbable that the weapon was connected with the offense. Zugg has produced no such evidence. Therefore we uphold the district court's enhancement.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge