**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 10 2000**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

   Plaintiff-Appellee,

v.

RAMON AQUILAR,

   Defendant-Appellant.

No. 99-6004
(W. District of Oklahoma)
(D.C. No. 98-CR-112)

**ORDER AND JUDGMENT**[*]

Before **EBEL**, **ANDERSON,** and **MURPHY**, Circuit Judges.

   Appellant, Ramon Aguilar, [1] appeals from the sentence imposed by the

district court following his conviction for conspiring to distribute cocaine.

Aguilar contends the district court erroneously enhanced his sentence by two

levels under United States Sentencing Guidelines § 2D1.1(b)(1) for possession of

---

   [*]This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

   [1]Although Aguilar's name is spelled "Aquilar" in the case caption, it is
spelled "Aguilar" both in his appellate brief and in the indictment. This court
will refer to him in the body of this opinion as "Aguilar."

a dangerous weapon during the commission of the drug offense. Aguilar also argues the district court failed to make adequate factual finding on his objections to the Presentence Report ("PSR"). Exercising jurisdiction pursuant to 28 U.S.C § 1291 and 18 U.S.C. § 3742(a)(2), this court **affirms**. We nevertheless **remand** to the district court to complete the ministerial task of reducing its oral findings on Aguilar's objections to the § 2D1.1 enhancement to writing and attaching them to the PSR.

## I. Factual Background

Aguilar was named in two counts of a four-count indictment. Aguilar's co-defendants were identified in the indictment as Modesto Sicairos, Jose Patron-Montano, and Normal Aguirre. The charges against Aguilar and his co-defendants stemmed from an investigation of Patron-Montano conducted by the Drug Enforcement Agency and the Oklahoma City Police Department.

During a May 28, 1998 meeting with Patron-Montano and Aguirre, an undercover officer showed Patron-Montano $185,000 in cash and indicated his interest in purchasing ten kilos of cocaine that night. Patron-Montano stated he did not know if he could obtain ten kilos but he was confident he could get five kilos. After the meeting disbanded, a confidential source paged Patron-Montano and informed him the undercover officer would pay $19,000 per kilo if Patron-Montano could supply at least five kilos.

Later that day, Patron-Montano contacted the confidential source and told him that he had obtained the five kilos. Patron-Montano further indicated he wanted to conduct the transaction at his residence. After speaking with the undercover officer, the confidential source telephoned Patron-Montano and informed him that the buyer wanted the transaction to be completed in a public place. Patron-Montano continued to insist that the transaction take place at his residence. Several telephone calls were made between Patron-Montano, the confidential source, and the undercover officer but the parties were unable to agree on a location. During one of these telephone calls, Patron-Montano advised the confidential source that the suppliers had arrived at the residence and suggested the transaction could be conducted outside in his yard. When the undercover officer refused to meet at Patron-Montano's residence, Patron-Montano told the confidential source the suppliers were angry and were leaving the residence.

During the course of the telephone calls between Patron-Montano, the confidential source, and the undercover officer, surveillance officers observed a vehicle arrive at Patron-Montano's residence. When the vehicle left the residence, officers in a marked police car followed it. A traffic stop was initiated and the officers observed the driver of the vehicle make furtive gestures toward

the floorboard area. It was later determined that Aguilar's co-defendant, Modesto Sicairos, was the driver of the vehicle, and Aguilar the passenger.

Sicairos consented to a search of the vehicle. During the search, officers discovered a semi-automatic pistol under the edge of the driver's seat. Two cellular telephones, a pager, and an address book were also found in the vehicle and Sicairos was in possession of $1458 in U.S. currency. A drug-detection dog alerted to the trunk of the vehicle where officers found a cardboard box containing four packages of cocaine with a net weight of 3993 grams. During a presentence interview, Aguilar admitted he knew there were drugs in the vehicle but denied any knowledge of the gun.

Count 1 of the indictment charged Aguilar with conspiracy to distribute and possess with intent to distribute a mixture or substance containing a detectable amount of cocaine in violation of 21 U.S.C. §§ 841(a)(1), 846. Count 2 charged that on May 28, 1998, Aguilar and Sicairos possessed with intent to distribute approximately four kilos of a mixture or substance containing a detectable amount of cocaine, in violation of 21 U.S.C. § 841(a)(1). In exchange for his plea of guilty to Count 1, the charge against Aguilar contained in Count 2 was dismissed. The PSR computed Aguilar's total offense level at thirty-two and his criminal history category at II. This computation included a two level increase to the base offense level because Aguilar possessed a dangerous weapon

during the commission of the drug offense. The computation did not include a decrease to the base offense level for acceptance of responsibility.

Aguilar objected to both the two-level increase for the firearm possession and the lack of a decrease for acceptance of responsibility. At sentencing, the district court sustained one of Aguilar's objections and granted him a two-level decrease for acceptance of responsibility. The court, however, denied Aguilar's objection to the two-level increase for possession of the firearm during the commission of a drug offense under USSG § 2D1.1(b)(1). Aguilar's base offense level was adjusted to level thirty and he was sentenced to 125 months' imprisonment and four years of supervised release. Aguilar then filed this appeal, contending the district court erred when it increased his base offense level by two levels under USSG § 2D1.1(b)(1). Aguilar also claims the district court failed to make adequate findings on his objections to the PSR.

## II. DISCUSSION

### A. Standard of Review

This court reviews the factual findings made by a sentencing court for clear error. *See United States v. Roberts*, 980 F.2d 645, 647 (10th Cir. 1992). Under this standard, this court will not reverse the district court "unless the court's finding was without factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been

made." *United States v. Beaulieu*, 900 F.2d 1537, 1540 (10th Cir. 1990). A district court's legal interpretation of the sentencing guidelines is reviewed *de novo*. *See Roberts*, 980 F.2d at 647.

**B.     Two-Level Enhancement**

USSG § 2D1.1(b)(1) calls for a two-level increase in the base offense level of a defendant charged with a drug offense "[i]f a dangerous weapon (including a firearm) was possessed" during the commission of the offense. This court has held that the § 2D1.1(b)(1) enhancement is appropriate if the government is able to show by a preponderance of the evidence that "a temporal and spacial relation existed between the weapon, the drug trafficking activity, and the defendant." *United States v. Roederer*, 11 F.3d 973, 982 (10th Cir. 1993) (quotation omitted).

A co-defendant's possession of a dangerous weapon may be attributed to a defendant if the possession of the weapon was known to the defendant or reasonably foreseeable by him. *See United States v. McFarlane*, 933 F.2d 898, 899 (10th Cir. 1991). Once possession is established, the enhancement should be applied unless the defendant is able to show that "it is clearly improbable that the weapon was related to the offense." *United States v. Robertson*, 45 F.3d 1423, 1449 (10th Cir. 1995) (quotation omitted).

Here, the government has shown that the gun was located in the same vehicle in which the drugs were discovered. Additionally, the government has

introduced evidence from which it could easily be inferred that Sicairos actually handled the gun as he attempted to hide it under the front seat of the vehicle. Thus, the government has clearly shown that Sicairos possessed the gun. Aguilar does not argue, however, that the evidence fails to establish that Sicairos possessed the gun. Neither does Aguilar argue that it was clearly improbable that the gun was connected to the offense. Instead, Aguilar argues that Sicairos' possession should not be attributed to him because he had no actual knowledge of the gun and the possession of the gun was not reasonably forseeable to him. [2]

The district court, after considering Aguilar's objection to the PRS, concluded that Aguilar had actual knowledge of Sicairos' possession of the firearm. In reaching this conclusion, the court relied on the evidence presented at the sentencing hearing that Sicairos was observed making furtive motions toward the floorboard of the vehicle after the traffic stop was initiated. The evidence also included testimony that the firearm was found under the driver's seat. From this evidence, it could reasonably be concluded that what the officers observed was Sicairos placing the gun under the front seat of the vehicle. The district court then inferred that Sicairos would not have attempted to hide the gun under the seat unless it was otherwise in plain view. The district court further inferred

_____

[2]In light of our conclusion, *infra*, that the district court did not err when it concluded Aguilar had actual knowledge of the firearm, it is unnecessary for us to address the question of whether Sicairos' possession was reasonably forseeable

that Aguilar must have known of the existence of the weapon because he was seated next to Sicairos while Sicairos placed the gun under the seat.

Aguilar's only response to the evidence presented is to repeatedly deny that he had actual knowledge of the gun. Aguilar's denial, however, is belied by the evidence presented at the sentencing hearing. The district court's finding of actual knowledge was amply supported by evidence in the record that Aguilar was seated immediately to the right of Sicairos as Sicairos attempted to place the gun under the front seat of the vehicle. Thus, although Aguilar denies having actual knowledge of the firearm, the district court's finding of actual knowledge was not clearly erroneous in light of the evidence presented at the sentencing hearing. The district court did not err when it attributed Sicairos' possession to Aguilar and properly enhanced Aguilar's sentence under USSG § 2D1.1(b)(1).

### C.    Objections to the PSR

The PSR, prepared on September 18, 1998, recommended that Aguilar's sentence be enhanced two levels pursuant to USSG § 2D1.1(b)(1). Aguilar filed objections to the PSR on October 15, 1998 challenging, in part, the § 2D1.1(b)(1) enhancement. In response to Aguilar's objections, an addendum was prepared and attached to the PSR. The response provided justifications for the imposition of the § 2D1.1(b)(1) enhancement, and stated, in part, "The defendant was observed bending over the front seat of the vehicle prior to the arrest." At the

sentencing hearing, Aguilar challenged the statement noting that, "[a]ll of the reports . . . show that Mr. Sicairos . . . was bending over the seat and apparently trying to hide a gun. . . . they are trying now to show that it was [Aguilar who] was doing that, which is contrary to all of the reports that have ever been written." On appeal, Aguilar argues the district court failed to make adequate findings on his objections to the PSR as required by Fed. R. Crim. P. 32(c)(1). [3]

Rule 32(c)(1) provides, in part, that when a party objects to a matter contained in the presentence report, "the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." Rule 32(c)(1) also provides that "a written record of these findings and determinations must be appended to any copy of the presentence report made available to the bureau of prisons."

Aguilar's argument that the district court failed to make adequate findings lacks merit. It is clear from the record that the district court considered Aguilar's contention that the response to his written objection contained a factual inaccuracy. The undercover officer testified at the sentencing hearing and confirmed Aguilar's position that the statement in the PSR was factually

---

[3]In his opening brief, Aguilar relies on Fed. R. Crim. P. 32(c)(3)(D) to support his argument. Aguilar acknowledges in his reply brief that Rule 32(c)(3)(D) has been superceded by Fed. R. Crim. P. 32(c)(1).

erroneous. Prior to overruling Aguilar's objection to the § 2D1.1(b)(1) enhancement, the district court stated, "even though it was not Mr. Aguilar who was observed making the furtive motion of what appeared to be stuffing the gun under the seat, he was right there in the front seat, the gun was within reach . . . ." It is clear from the court's statement that it accepted Aguilar's contention that the PSR erroneously stated that Aguilar was seen bending over the front seat of the vehicle. This statement makes it equally clear that the district court considered Aguilar's objections to the PSR but nevertheless concluded that Aguilar's actual knowledge of the possession of the gun could be inferred from the evidence presented at the sentencing hearing, thus, overruling Aguilar's written objections to the § 2D.1.1(b)(1) enhancement. Aguilar's argument that the district court erred by failing to made adequate findings as required by Rule 32(c)(1) thus fails.

Aguilar, however, correctly asserts that the district court was obligated under Rule 32(c)(1) to reduce its factual findings to writing and append them to the PSR. The government concedes that the district court has failed to append these findings to the PSR. Thus, we remand to the district court with instructions to reduce its findings to writing and attach them to the PSR.

**III. CONCLUSION**

The sentence imposed by the district court is **affirmed**. Although this court concludes that the substance of Aguilar's Rule 32(c)(1) claim is without merit, the district court committed a technical error when it failed to append to the PSR written findings on Aguilar's objections to the § 2D1.1 enhancement. We **remand** to the district court with instruction to complete the ministerial task of reducing its oral findings on Aguilar's objections to the § 2D1.1 enhancement to writing and attaching them to the PSR.

ENTERED FOR THE COURT:


Michael R. Murphy
Circuit Judge