**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**FEB 6 2002**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

DWAYNE LAMONT BURGESS,

Defendant-Appellant.

No. 01-1168
(D.C. No. 00-CR-257)
(D. Colo.)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA** , Chief Judge, **BALDOCK** , Circuit Judge, and **BRORBY** , Senior Circuit Judge.

---

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Appellant Dwayne Lamont Burgess pled guilty to possession with intent to distribute cocaine under 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii). Mr. Burgess

---

\* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

reserved his right to contest the denial of his motion to suppress, which he now appeals, along with aspects of his sentence. We exercise jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742 and AFFIRM.

## I. Background

On May 25, 2000, Colorado Springs police officers and Alcohol, Tobacco and Firearms agents executed a warrant allowing them to search Mr. Burgess's apartment for drugs and/or illegal firearms. Among other things, the officers found a pistol and a scale of the type used for weighing drug quantities. Meanwhile, officers positioned outside the apartment noticed an individual matching Mr. Burgess's description drive up to the apartment building and continue past the building upon seeing the officers in front. The officers followed Mr. Burgess to an alley, where they found the car parked and Mr. Burgess standing next to a dumpster, in a posture as if he were urinating.

The officers detained Mr. Burgess and two other individuals who were in the car with him. The officers then searched the car and the dumpster. In the dumpster they found two plastic bags containing drugs, prompting them to place Mr. Burgess under arrest. The police officers did not find any weapons or additional drugs either in the car or on Mr. Burgess's person.

Mr. Burgess was taken to the police station, where he was held for a period of time before being interviewed by two officers. Prior to reading Mr. Burgess

his Miranda rights, the officers told Mr. Burgess that they had found drugs in his apartment and had seen him throw the drugs in the dumpster. Both of these statements were untrue. Mr. Burgess did not say anything in response to these statements before the officers read him his Miranda rights. Mr. Burgess then waived his Miranda rights and confessed to selling crack for about the past three months. Mr. Burgess further stated that he had received the gun found in his apartment from a friend who had died, and that he had brought it with him in his car on a few occasions when he thought a drug deal might be unsafe. Mr. Burgess requested a lawyer approximately 30 minutes into the interview, and questioning ended at that time.

Mr. Burgess moved to suppress the evidence obtained from the search and his confession on the basis that (1) the police officers lacked probable cause for his arrest and (2) his confession was involuntary. The court denied the motion. Mr. Burgess entered a guilty plea but reserved his right to appeal the ruling on the suppression motion.

At sentencing, Mr. Burgess requested that the "safety valve" provision of the United States Sentencing Guidelines be applied to reduce his prescribed sentence. See U.S. Sentencing Guidelines Manual § 5C1.2(2) (2000) ("U.S.S.G."). [1] The district court concluded that Mr. Burgess had possessed a

---

[1] Mr. Burgess was sentenced under the 2000 Sentencing Guidelines, which
(continued...)

firearm in connection with the offense, thus mandating a two-level enhancement for weapon possession, U.S.S.G. § 2D1.1(b)(1), and precluding application of the safety valve. [2] The court sentenced Mr. Burgess to the statutory minimum of sixty months' imprisonment.

## II. Discussion

Mr. Burgess appeals the denial of his motion to suppress, arguing that the police lacked probable cause for his arrest and that his confession was involuntary. We find each of these arguments without merit. Mr. Burgess also appeals the refusal to apply the safety valve, arguing that the government failed to demonstrate a sufficient connection between the offense and the gun found in Mr. Burgess's apartment. We reject this argument and hold that the district court properly refused to apply the safety valve, because the evidence showed that Mr. Burgess possessed a firearm in connection with relevant conduct.

---

[1](...continued)
apply to this appeal.

[2] Mr. Burgess appeals denial of the safety valve only, despite the fact that the rulings on the enhancement and the safety valve were made on the same basis and are essentially a single ruling. This is presumably because the district court sentenced Mr. Burgess to the statutory minimum, and, if the safety valve does not apply, removal of the enhancement would have no effect on his sentence. See, e.g., United States v. Sherwin, 271 F.3d. 1231, 1235-36 (10th Cir. 2001) (Court of Appeals will not address purported error in applying Guidelines where removal of enhancement would have no effect on sentence).

A.  Probable Cause for Arrest

Mr. Burgess first argues that the officers lacked probable cause to arrest him.  We review for clear error the district court's factual findings underlying its denial of the motion to suppress.  United States v. Gama-Bastidas, 142 F.3d 1233, 1237 (10th Cir. 1998).  We review de novo the legal question of whether police officers had probable cause for an arrest.  United States v. Edwards, 242 F.3d 928, 933 (10th Cir. 2001).

Probable cause for an arrest exists if, under the totality of the circumstances, a "reasonable person [would] believe that an offense has been or is being committed by the person arrested."  United States v. Vazquez-Pulido, 155 F.3d 1213, 1216 (10th Cir. 1998) (quotation omitted).  Mr. Burgess asserts that there was no basis to conclude that the gun in his apartment was possessed illegally, because there was no indication that it was used in drug trafficking.  Further, he argues, the police admitted they did not have enough evidence to connect him to the drugs in the dumpster at the time of his arrest.  Based on these arguments, he contends that neither the discovery of the gun nor the discovery of the drugs could have provided probable cause for his arrest.

In fact, it was permissible for the officers to detain Mr. Burgess in light of the reasonable suspicion of danger created by their discovery of a weapon in his apartment.  Terry v. Ohio, 392 U.S. 1, 26-27 (1968) (permissible to search for

weapons if there is a reasonable apprehension of danger). Mr. Burgess argues that this detention would be considered an arrest if it continued past the point when the officers concluded there were no weapons in the car or on Mr. Burgess, citing United States v. Perdue, 8 F.3d 1455, 1464-65 (10th Cir. 1993), but testimony revealed that the officers searched the dumpster immediately upon detention of Mr. Burgess. Once the drugs were found in the dumpster, with all circumstances suggesting that Mr. Burgess had thrown them there, there was probable cause for the officers to arrest him. United States v. Snow, 82 F.3d 935, 942 (10th Cir. 1996) (reasonable inference derived from circumstantial evidence sufficient to establish probable cause). The fact that the officers thought additional evidence would be required to prove Mr. Burgess's connection to the drugs does not imply that they lacked probable cause to arrest him. United States v. Watson, 423 U.S. 411, 431 n.4 (1976) (Powell, J., concurring) ("Whatever evidence may be necessary to establish probable cause . . . it is clear that it never need rise to the level required to prove guilt beyond a reasonable doubt.").

## B. Voluntariness of Confession

Mr. Burgess next argues that the circumstances of his confession rendered it involuntary. We review de novo the question of whether a confession was voluntary. United States v. Lugo, 170 F.3d 996, 1003 (10th Cir. 1999).

Mr. Burgess argues that a combination of factors caused him to confess involuntarily. First, he argues that the confession was tainted by arrest without probable cause. Because we conclude that there was probable cause for Mr. Burgess's arrest, however, this factor does not support the notion that his confession was involuntary. Second, the officers attempted to interrogate him prior to reading him his Miranda rights. Finally, the officers made promises of leniency they knew they could not fulfill.

Regarding the second factor, the alleged pre-Miranda interrogation, it is true that a statement constitutes interrogation if it is "reasonably likely to elicit an incriminating response." Rhode Island v. Innis, 446 U.S. 291, 301 (1980). Here, the officers' false statements about the evidence were, by the officers' own admissions, designed to do precisely that – elicit incriminating statements by Mr. Burgess. The crucial point, however, is that Mr. Burgess did not say anything in response to the officers' pre-Miranda statements, and the officers' tactics are therefore ultimately without consequence. United States v. Lowe, 569 F.2d 1113, 1116 (10th Cir. 1978) (no error in admitting post-Miranda statements where pre-Miranda statements were excluded and were not "stepping stones" to incriminating evidence). In addition, misrepresentations about evidence against a defendant do not in and of themselves render a confession involuntary. Lucero v. Kerby, 133 F.3d 1299, 1311 (10th Cir. 1998). Although one may question the

motive of the officers in making provocative statements prior to reciting a suspect his Miranda rights, there is no indication here that the officers' statements affected the voluntariness of the confession Mr. Burgess made after he had been read his Miranda rights.

Nor does the third factor named by Mr. Burgess, the false promises of leniency, suggest that his confession was involuntary. The officers' promises were vague and non-committal, and such promises are not coercive. See, e.g., United States v. Glover, 104 F.3d 1570, 1582 (10th Cir. 1997) (promise to bring defendant's cooperation to the court's attention not coercive). Additional testimony regarding the officers' knowledge that they could provide no leniency under the federal Sentencing Guidelines would not have strengthened this argument. Thus, even if it was error for the district court to disallow this line of questioning by Mr. Burgess, no prejudice resulted from it. See Fed. R. Evid. 103(a); Fed. R. Crim. P. 52(a).

For these reasons, we are not persuaded that Mr. Burgess's confession was involuntary. As a result of this conclusion and our conclusion that probable cause existed, we hold that the district court properly denied the motion to suppress.

## C. Safety Valve Provision

Finally, Mr. Burgess argues that the district court erred in declining to apply the safety valve provision of the Sentencing Guidelines. The safety valve

provision, which permits the court to depart downward from the statutory minimum sentence, is designed to allow courts to impose proportionately lesser sentences on defendants who are less culpable. United States v. Acosta-Olivas, 71 F.3d 375, 378 (10th Cir. 1995). To qualify for application of the safety valve, a defendant must demonstrate that he meets all five criteria listed in the provision. [3] If all the factors are met, application of the safety valve provision is mandatory. United States v. Verners, 103 F.3d 108, 110 n.3 (10th Cir. 1996). It is undisputed that Mr. Burgess met four of the five factors. The district court concluded that he was ineligible for the safety valve, however, because he "possess[ed] a firearm [i.e., the gun found in the apartment] . . . in connection with the offense." U.S.S.G. § 5C1.2(2). [4]

---

[3]     The criteria listed in U.S.S.G. § 5C1.2 are:

(1) the defendant does not have more than 1 criminal history point . . . ; (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense . . . ; and (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan . . . .

[4]     The majority of cases examining the concept of weapon possession in a sentencing context do so with respect to the weapon-possession enhancement of § 2D1.1, rather than subsection (2) of the safety valve provision. This is because

(continued...)

"We review factual findings [of the sentencing court] for clear error; we give due deference to the application of the Guidelines to the facts; we review purely legal questions de novo." United States v. Vaziri, 164 F.3d 556, 568 (10th Cir. 1999).

At his sentencing hearing and on appeal, Mr. Burgess argues that the facts do not support the conclusion that he possessed the gun in connection with the offense. Officers found the gun in Mr. Burgess's apartment, which is located a block or two from the alley where he was arrested. Mr. Burgess argues that the gun was too remote to facilitate the charged offense of a single count of

---

[4](...continued)
the majority of courts first conclude that the enhancement applies and then determine that application of the safety valve is precluded as a result.

It appears that the district court here followed roughly this reasoning. The court first stated that "[t]he same legal issues apply to both issues." It then considered the evidence and concluded that the enhancement provision applied. Finally, the court stated that, "[f]or similar reasons," the safety valve did not apply.

We note, however, that it is not clear whether the substantive standards of the two provisions are identical. As we emphasized in United States v. Roederer, 11 F.3d 973, 982 (10th Cir. 1993), § 2D1.1 was amended in 1991 to eliminate the requirement that the weapon be carried "during the commission of the offense," leaving only the requirement that the weapon "was possessed." By contrast, § 5B1.2(2) specifically requires that the weapon be possessed "in connection with the offense." Arguably, this suggests that the standard for finding weapon possession under the safety valve is more demanding. We need not decide the precise relationship between the two standards, however, because we determine that the evidence in this case supports the finding that the defendant possessed the weapon in connection with relevant conduct. For the same reason, we need not decide whether failure to appeal the weapon-possession enhancement, even though it did not affect the sentence, precludes review of the safety valve issue.

possession with intent to distribute, and further that the prior occasional use of the gun is not "relevant conduct" for sentencing purposes. The government contends that there was sufficient proximity between the gun and Mr. Burgess's drug-trafficking activities. In agreeing with the government, the district court reasoned as follows:

> I think a fair inference on these facts is that the location of the defendant's arrest and the location of those drugs is happenstance in this case. It is a fair inference that the defendant was purchasing the drugs that were found in the Dumpster; and but for the fact that he was interrupted by the officer's discovery and chase, those drugs would have ended up in his room.

> I say that because the defendant admitted that he used or possessed the gun in connection with his drug-trafficking activities. That's really what the adjustment is all about. The cases that talk[] about the drugs and the gun being in the same location are simply saying that such proximity gives rise to the fact that he used the gun in connection with drug trafficking.

The district court determined that Mr. Burgess had possessed the gun in connection with the offense. The court therefore found that application of the safety valve was precluded.

Subsection 5C1.2(2) of the Sentencing Guidelines bars application of the safety valve if a defendant possessed a gun or other dangerous weapon "in connection with the offense." In the context of the safety valve provision, the term "offense" means "the offense of conviction and all relevant conduct." U.S.S.G. § 5C1.2, cmt. n.3. This is consistent with the Guidelines' generally

-11-

applicable definition of "offense": "'Offense' means the offense of conviction and all relevant conduct under § 1B1.3 (Relevant Conduct) unless a different meaning is specified or is otherwise clear from the context." U.S.S.G. § 1B1.1, cmt. n.1(*l*). Based on the district court's reasoning at sentencing, it is our understanding that the district court concluded that the occasions on which Mr. Burgess possessed the gun were relevant conduct.

"Relevant conduct" is defined in section 1B1.3 to include "all acts or omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant . . . that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S.S.G. § 1B1.3(a)(1). In addition, with respect to offenses that would have to be grouped under the guidelines, the definition encompasses " all acts and omissions described in [subsection 1B1.3(a)(1)] above that were part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2).[5]

---

[5] Subsection 5C1.2(2) refers to possession of a firearm "in connection with the offense." This subsection does not " expressly modif[y]" the Guidelines' generally applicable definition of "offense," which specifically incorporates the definition of relevant conduct in § 1B1.3. U.S.S.G. § 1B1.1, cmt. n.1, 1(*l*). We therefore conclude that § 1B1.3 controls the determination of what is relevant conduct for purposes of § 5C1.2(2). See also U.S.S.G. § 5C1.2, cmt. n.4 (term "defendant" in § 5C1.2(2) to be read consistently with § 1B1.3 definition of relevant conduct); Acosta-Olivas , 71 F.3d at 378 (reading relevant conduct under
(continued...)

-12-

The district court's phrase, "in connection with his drug-trafficking activities" indicates that the court relied on subsection (a)(2).

For the prior deals to qualify as relevant conduct under subsection 1B1.3(a)(2), three criteria must be met. First, the deals must involve conduct listed in subsections 1B1.3(a)(1)(A) and (B). This requirement is plainly met, because Mr. Burgess himself "committed" the acts of drug sale. Second, they must be offenses for which the Guidelines would have required grouping with the offense of conviction, if the defendant had been convicted of them. This requirement, too, is plainly satisfied, because the drug sales would have violated the same statute as the offense of conviction, and the Guidelines require grouping of these offenses. See 21 U.S.C. § 841(a); U.S.S.G. §§ 2D1.1, 3D1.2(d). Third, they must have been "part of the same course of conduct or common scheme or plan." United States v. Taylor, 97 F.3d 1360, 1363 (10th Cir. 1996) (laying out the requirements of U.S.S.G. § 1B1.3(a)(2)).

In determining whether conduct qualifies as part of the "same course of conduct," the focus of the inquiry is "whether defendant has engaged in an identifiable 'behavior pattern' . . . of specified criminal activity." United States v. Roederer, 11 F.3d 973, 979 (10th Cir. 1993) (quoting United States v.

_____

[5](...continued)
§ 5C1.2(5) consistently with definition of relevant conduct in § 1B1.3(a)(1)(B)).

<u>Perdomo</u>, 927 F.2d 111, 115 (2d Cir. 1991)). "Similarity, regularity, and temporal proximity are the significant elements to be evaluated." <u>Id.</u>

Mr. Burgess admitted that he had been dealing crack cocaine for approximately three months prior to his arrest, and that he had taken the gun with him for protection on "a few" occasions. This admission was corroborated by a confidential informant, who stated that he had once seen a gun underneath the driver's seat in Mr. Burgess's car when he was purchasing drugs from Mr. Burgess. In addition, Mr. Burgess referred to use of a car during prior drug deals, and he had gotten out of his car moments before his arrest for the charged offense. Finally, the district court found that, immediately prior to the arrest, Mr. Burgess was on his way to his apartment, where officers had found the gun and drug paraphernalia (the scale). This evidence is sufficient to support a finding that Mr. Burgess was engaged in an identifiable pattern of dealing drugs, and that both the offense of conviction and the prior drug deals he admitted were part of that pattern. The district court therefore correctly treated the prior drug deals as relevant conduct.

Because the prior drug deals qualify as relevant conduct, they are part of the "offense" for purposes of subsection 5C1.2(2). A firearm's "proximity and potential to facilitate the offense is enough to prevent application of USSG § 5C1.2(2)." <u>United States v. Hallum</u>, 103 F.3d 87, 89 (10th Cir. 1996). On

those occasions when Mr. Burgess took the gun with him, the gun certainly was "proximate" and had the "potential to facilitate the offense." Indeed, Mr. Burgess specifically stated that he brought the gun with him for protection. Thus, the district court correctly found that Mr. Burgess possessed a gun in connection with the offense. Accordingly, the district court properly concluded that the safety valve did not apply.

## III. Conclusion

For these reasons, the district court's denial of Mr. Burgess's motion to suppress and its refusal to apply the safety valve provision are AFFIRMED.

Entered for the Court


Deanell Reece Tacha
Chief Judge