**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUN 10 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

ANN LORI TALAMANTES aka Ann
Talamantes,

    Defendant - Appellant.

No. 03-1448

(D. Colorado)

(D.C. No. 02-CR-605-RB)

---

**ORDER AND JUDGMENT** *

---

Before **TACHA,** Chief Judge, **ANDERSON** and **BALDOCK** , Circuit Judges.

---

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist the determination of

this appeal. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

*This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. The court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Ann Talamantes appeals the sentence imposed following her plea of guilty to knowingly conspiring to manufacture methamphetamine in an amount of fifty grams or more, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). We affirm.

**BACKGROUND**

On April 15, 1999, while executing a search warrant at the residence of Ann and Ken Talamantes at 8771 Dawson, Apartment 202, in Adams County, Colorado, law enforcement authorities found jars of iodine, several containers containing liquids which appeared to be pseudoephedrine, coffee filters, acetone, hypophosphorus acid, blister packs with pseudoephedrine medications, an oval pan with a razor blade, a glass funnel, a digital scale and thirty grams of methamphetamine. Some of these items were found in an office in the small apartment, while others were found in the living room, kitchen and bedroom. The lead officer, Randy Goin, testified that "[e]ssentially we found everything that was needed to manufacture methamphetamine in the apartment, with the exception of hydrochloric or muriatic acid, which a quick trip to the hardware store [can provide]." Tr. of Hr'g on Sentencing at 17, R. Vol. II.

Officers also found surveillance equipment, including a camera outside the front door, a monitor for the camera in the office, and a night vision scope. Additionally, they retrieved four unloaded firearms from the residence: a .357

and a .38 in a soft-sided briefcase in the office, a Raven .25 automatic pistol in a dresser drawer in the bedroom, and a Springfield bolt-action rifle underneath the waterbed frame in the bedroom. A box of .22 caliber bullets was found in the closet in the office. Ann Talamantes told the officers about the two weapons in the office, and explained that she had obtained them as collateral after posting bond for two people in jail, but had never used them. She denied any knowledge of the weapons found in the bedroom. She testified at her sentencing hearing that she and her husband had obtained the surveillance equipment after a home invasion robbery in 1996. Her husband, Ken, testified that he had gotten the rifle found in the bedroom as a gift for his father, but he had kept it in order to make some repairs on its scope. He testified that he had forgotten about the pistol found in the bedroom because he had not seen it in a long time. Ken further testified that Ann had no knowledge of the weapons in the bedroom.

Both Ann and Ken Talamantes pled guilty. Ann Talamantes' base offense level for sentencing purposes was 34, based upon the amount of methamphetamine which could have been produced from the materials recovered at the apartment. The presentence report ("PSR") recommended that her base offense level be increased by two levels pursuant to United States Sentencing Commission, Guidelines Manual ("USSG"), §2D1.1(b)(1) (Nov. 2002), because Talamantes possessed four guns "in connection with" the offense. The PSR

-3-

recommended a three-level decrease for acceptance of responsibility under USSG §3E1.1(a) and (b). Talamantes objected to the two-level enhancement under §2D1.1(b)(1), and she also sought a two-level decrease under the safety valve provision of USSG §5C1.2, on the ground that she had not used a firearm in connection with the offense and otherwise met the safety valve requirements.

The government opposed Talamantes' positions on §§2D1.1(b)(1) and 5C1.2, but did not oppose the acceptance of responsibility downward departure. Additionally, the government filed a USSG §5K1.1 motion requesting that Talamantes be given a downward departure of 25% from the otherwise applicable guideline sentence because she had provided substantial assistance to the government in its investigation of other members of the drug manufacturing conspiracy.

At the sentencing hearing held for both Ann and Ken Talamantes, they both testified, as did Officer Goin and a friend of Ann Talamantes. At the conclusion of the hearing, the court found that Ann Talamantes had possessed the two guns found in the office "in connection with" the operation of the methamphetamine production lab. Tr. of Hr'g on Sentencing at 79, R. Vol. II. More specifically, with respect to the §2D1.1(b)(1) enhancement, the district court held that it was "not clearly improbable" that Ann Talamantes had possessed the two weapons "in connection with" her offense. Id. With respect to the court's denial of

Talamantes' §5C1.2 safety valve reduction, the court found "[t]hat it has been established by a preponderance of the evidence" that Talamantes possessed the guns "in connection with" her offense.     Id. at 79-80.  The court sentenced Talamantes to 101 months' imprisonment, followed by four years of supervised release.  She appeals, arguing the district court erred in imposing the two-level increase under §2D1.1(b)(1) and in denying her the two-level decrease under §5C1.2.

## DISCUSSION

### I.  Section 2D1.1(b)(1) enhancement

Talamantes argues that the district court erred in increasing her base offense level by two points for possession of a weapon, in accordance with USSG §2D1.1(b)(1).  "We review factual findings under U.S.S.G. § 2D1.1(b)(1) for clear error; we give due deference to the application of the Guidelines to the facts; we review purely legal questions de novo."     United States v. Pompey  , 264 F.3d 1176, 1180 (10th Cir. 2001) (further quotation omitted).

Section 2D1.1(b)(1) provides a two-level increase "[i]f a dangerous weapon (including a firearm) was possessed."  The Guidelines further provide that "[t]he [enhancement for weapon possession] should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the

offense." USSG §2D1.1(b)(1), comment. (n.3). The government bears the initial burden of proving possession of a weapon by a preponderance of the evidence. Pompey, 264 F.3d at 1180; see also United States v. Humphrey, 208 F.3d 1190, 1210 (10th Cir. 2000). The government can satisfy this burden by demonstrating "'that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant.'" Pompey, 264 F.3d at 1180 (quoting United States v. Roederer, 11 F.3d 973, 982 (10th Cir. 1993)(further quotation and citation omitted)). Thus, "mere proximity to the offense" may satisfy the government's initial burden. United States v. Vaziri, 164 F.3d 556, 568 (10th Cir. 1999) (further quotation omitted). If the government satisfies its initial burden, "the burden shifts to the defendant to show 'that it is clearly improbable the weapon was connected with the offense.'" Pompey, 264 F.3d at 1181 (quoting Vaziri, 164 F.3d at 568).

In this case, the government presented evidence that the two weapons Ann Talamantes admittedly knew about were in the small office, near a safe containing methamphetamine and some of the materials used to manufacture methamphetamine, and in the same room in which surveillance equipment was found. The district court found that the government had met its initial burden of proof of possession by a preponderance of the evidence, and that Talamantes had

failed to establish that it was clearly improbable that the guns were connected to the drug manufacturing operation:

> [I]n this case it is pellucid or clarion to this court . . . that you were operating a methamphetamine lab from out of your house. It's equally clarion to the court that that security system that you told me was a vanguard against burglary served a secondary purpose, and that was to secure your clandestine meth[amphetamine] lab, and I also find and conclude as part of that security system, there were firearms involved.
>
> . . .
>
> I find that defendant Ann Talamantes was in actual or constructive possession of the .357 caliber handgun and the .38 caliber handgun.
>
> . . .
>
> I go on to find and conclude on this record that it was not clearly improbable that possession of the .357 caliber and .38 caliber handguns was used by Ann Talamantes in connection with the offense. . . .

Tr. of Hr'g on Sentencing at 78-79, R. Vol. II. Those findings are not clearly erroneous. It is immaterial that the guns were unloaded. See United States v. Roberts, 980 F.2d 645, 647 (10th Cir. 1992); see also United States v. Francis, 367 F.3d 805, 826 (8th Cir. 2004); United States v. Smythe, 363 F.3d 127, 129 (2d Cir. 2004); United States v. Harris, 128 F.3d 850, 853 (4th Cir. 1997); United States v. Mitchell, 31 F.3d 271, 278 (5th Cir. 1994); United States v. Ewing, 979 F.2d 1234, 1238 (7th Cir. 1992). We therefore affirm the district court's two-level enhancement of Talamantes' base offense level under §2D1.1(b)(1). See United States v. Alexander, 292 F.3d 1226, 1231 (10th Cir. 2002) (affirming

§2D1.1(b)(1) enhancement when gun was found in cigar box in closet of bedroom near a quantity of crack cocaine); United States v. Flores, 149 F.3d 1272, 1280 (10th Cir. 1998) (affirming §2D1.1(b)(1) enhancement when "a loaded shotgun was found in close proximity to a large quantity of drugs stored in the headboard of his bed").

## II. §5C1.2(a)(2) safety valve

The safety valve provisions of §5C1.2 permit the court to depart downward from the statutory minimum sentence in order to impose proportionately lesser sentences on defendants who are less culpable. To qualify for application of the safety valve, a defendant must demonstrate that he or she meets all five criteria listed, including that "the defendant did not . . . possess a firearm or other dangerous weapon . . . in connection with the offense." USSG §5C1.2(a)(2). The defendant must establish that he or she satisfies each criterion by a preponderance of the evidence. United States v. Virgen-Chavarin, 350 F.3d 1122, 1129 (10th Cir. 2003); see United States v. Hallum, 103 F.3d 87, 89 (10th Cir. 1996) ("We have recently held that the burden is on a defendant who seeks a reduction in sentence under § 5C1.2 to prove entitlement to it."). "We review a district court's application of the Guidelines' safety valve provisions for clear error," bearing in mind "that the district court's application of the safety valve is fact specific and

dependent on credibility determinations that cannot be replicated with the same accuracy on appeal." Virgen-Chavarin, 350 F.3d at 1129.

The district court held that Talamantes had failed to prove entitlement to the safety-valve reduction, finding that "it has been established by a preponderance of the evidence that . . . Ann Talamantes . . . possessed a firearm in connection with this offense within the meaning of U.S.S.G. 5C1.2(a)(2)." Tr. of Hr'g on Sentencing at 79-80, R. Vol. II. We find no error in that determination. [1]

---

[1]Talamantes cites an unpublished opinion of this court, in which we indicated "that it is not clear whether the substantive standards of the two provisions [§2D1.1(b)(1) and §5C1.2(2)] are identical." United States v. Burgess, No. 01-1168, 2002 WL 185545, at **4 n.4 (10th Cir. Feb. 6, 2002). She urges us to find that the two standards are substantively different and that the finding that she is eligible for a two-level increase under §2D1.1(b)(1) does not automatically preclude her from obtaining a §5C1.2(a) downward departure. See United States v. Bolka, 355 F.3d 909, 913 (6th Cir. 2004) ("We expressly disclaim the proposition that conduct warranting a § 2D1.1(b)(1) sentence enhancement *necessarily* forecloses the application of a § 5C1.2(a) "safety valve" reduction as this *per se* conclusion does not necessarily follow from the different evidentiary standards of §§ 2D1.1(b)(1) and 5C1.2(a)(2)."); see also United States v. Nelson, 222 F.3d 545, 550-51 (9th Cir. 2000). We need not address that argument in this case, as the district court made separate conclusions as to each guideline provision and did not hold that its resolution of the §2D1.1(b)(1) enhancement necessarily and automatically foreclosed application of the safety valve provision of § 5C1.2(a)(2).

## CONCLUSION

For the foregoing reasons, we AFFIRM the sentence imposed by the district court.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge